UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK BANKERS ASSOCIATION,
INC.,

               Plaintiff,

       – against –

THE CITY OF NEW YORK and THE COUNCIL
OF THE CITY OF NEW YORK,

             Defendants.

13 Civ. 7212 (KPF)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS BY DEFENDANT
THE COUNCIL OF THE CITY OF NEW YORK**

JEFFREY P. METZLER
Acting General Counsel
The Council of the City of New York
250 Broadway, 15th floor
New York, NY 10007

Attorney for Defendant
The Council of the City of New York

Dated: April 4, 2014

# <u>CONTENTS</u>

Table of Authorities ............................................................................................... ii

Preliminary Statement ............................................................................................. 1

I.    Plaintiff Misreads Controlling Precedent And Fails to Demonstrate A Certainly
Impending Injury In Fact ...............................................................................2

    A.   Plaintiff Fails to Demonstrate Cognizable Injury Based on Possible
Future Harm of Debarment .................................................................. 2

    B.   Plaintiff Fails to Demonstrate Cognizable Injury Based on Possible
Future Reputational Harm.................................................................... 6

II.   Plaintiff's Claim Is Not Ripe .........................................................................9

III.  The City's RFI Does Not Support Plaintiff's Arguments.................................11

IV.  LL 38 Is Not Preempted.................................................................................13

    A.   Plaintiff's Narrow Definition of Proprietary Interest Does Not Comport
With Controlling Precedent .................................................................. 13

    B.   LL 38 Does Not Conflict With Federal or State Laws or Regulations....................... 15

Conclusion ............................................................................................................ 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

Advanced Management Technology, Inc. v. Federal Aviation Administration,
211 F.3d 633 (D.C. Cir. 2000) ........................................................................6, 7, 8

Am. Booksellers Found. v. Dean,
342 F3d 96 (2d Cir 2003).....................................................................................4 n.3

Bldg. Indus. Elec. Contrs. Ass'n v. City of New York,
678 F.3d 184 (2d Cir. 2012)..................................................................................2, 14

Chamber of Commerce v. Reich,
57 F.3d 1099 (D.C. Cir. 1995).................................................................................10

Clapper v. Amnesty International, USA,
133 S. Ct. 1138 (2013) ...............................................................................1, 2, 3, 5, 8

Clinton v. City of New York,
524 U.S. 417 (1998)......................................................................................................5

Cole v. Gummow,
2003 WL 22455387 (ND Tex Oct. 22, 2003)....................................................7

Davis v. Federal Election Comm'n,
554 U.S. 724 (2008)......................................................................................................5

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,
528 U.S. 167 (2000)......................................................................................................5

Grendell v. Ohio Supreme Court,
252 F.3d 828 (6th Cir. 2001) ...............................................................................7

Hedges v. Obama,
724 F.3d 170 (2d Cir. 2013).....................................................................1, 3, 4, 5, 6

In re Combustion Equipment Associates, Inc.,
838 F.2d 35 (2d Cir. 1988).......................................................................................7

Mayor v. Council,
    4 Misc. 3d 151 (N.Y. Sup. Ct. 2004) ...............................................................................14

MedImmune v. Genentech, Inc.,
    549 U.S. 118 (2007) ............................................................................................................5

Nat'l Park Hospitality Ass'n v. Dep't of Interior,
    538 U.S. 803 (2003) ............................................................................................................9

New York City Council v. New York City Housing Authority,
    41 Misc. 3d 1238(A), 2013 N.Y. Slip Op. 52052(U)
    (Sup. Ct., N.Y. County, Dec. 2, 2013) ...........................................................................11

O'Gilvie v Corp. for Nat. Community Serv.,
    802 F. Supp. 2d 77 (D.D.C. 2011) ...................................................................................7

Pacific Capital Bank, N.A. v. Connecticut,
    542 F.3d 341 (2d Cir. 2008) .............................................................................................4

Rothstein v. UBS AG,
    708 F.3d 82 (2d Cir.2013) ................................................................................................8

Shulz v. I.R.S.,
    395 F.3d 463, 464 (2d Cir. 2005) ..............................................................................3 n.2

Schwaninger & Assoc. v F.C.C.,
    2000 WL 817892 (D.C. Cir. May 19, 2000) ....................................................................7

Spencer v. Kemna,
    523 U.S. 1 (1998) ..............................................................................................................6

Toilet Goods Ass'n, Inc. v. Gardner,
    387 U.S. 158 (1967) ..........................................................................................................9

Volvo N. Am. Corp. v. Men's Int'l Prof. Tennis Council,
    857 F.2d 55 (2d Cir. 1988) .............................................................................................10

Wisconsin Dep't of Industry, Labor and Human Rel'ns v. Gould, Inc.,
    475 U.S. 282 (1986) ........................................................................................................14

**Statutes and Regulations**

New York City Charter § 1524-A(1)(b)(iii) ..................................................................... 7-8

New York City Charter § 1524-A(1)(b)(v)..........................................................................13

**Other Authorities**

13A Wright & Miller, Fed. Prac. & Proc. Juris. § 3531 (3d ed. 2014)............................11

## PRELIMINARY STATEMENT

Local Law 38 ("LL 38" or the "Law") was passed nearly two years ago and yet Plaintiff, the New York Bankers' Association ("NYBA" or "Plaintiff") is unable even to allege that any of its members has suffered a concrete injury in fact.  Rather, Plaintiff alleges only that its members *will* suffer an injury based on a speculative series of events that have not and may never occur – i.e., the CIAB will be constituted, the CIAB will request information from NYBA's members, the CIAB will publish an annual report that includes unfavorable treatment of Plaintiff's members, the Banking Commission will consider the CIAB's annual report as one of many factors in deciding which banks to designate, and the Banking Commission will exercise its discretion not to designate one of Plaintiff's members as a deposit bank based on the CIAB's annual report and/or the public will read the CIAB's annual report and lower the esteem in which it currently holds NYBA's members.  Under Clapper v. Amnesty International, USA, 133 S. Ct. 1138 (2013) and Hedges v. Obama, 724 F.3d 170 (2d Cir. 2013), this alleged series of speculations is plainly insufficient to meet Plaintiff's burden of demonstrating standing.

Plaintiff's heavy reliance on a Request for Information ("RFI") issued in December 2013[1] to demonstrate that an injury is "certainly impending" is not only procedurally improper (standing must exist at the time the complaint is filed) but is premised on a misreading of the RFI.  As its name implies, a request for *information* from contractors about how to implement LL 38 does not obligate the City to take any action at any point, let alone imminently.  And indeed, as the Mayor recently wrote this Court, it will likely be six months before a contractor will be put in place to begin performing CIAB's work, to say nothing of when and if any action will be taken that could result in the hypothetical injuries Plaintiff alleges – i.e., debarment or reputational harm.

---

[1] See Supplemental Declaration of Matthew A. Schwartz, dated January 27, 2014, Exhibit 25 (Dkt # 35-1).

Finally, Plaintiff's preemption claim is premised on an unduly narrow concept of "proprietary interest" that was recently rejected by the Second Circuit, which held that "[a]cting like a proprietor does not mean acting exclusively with the narrow goal of minimizing costs regardless of consequences." Bldg Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 191 (2d Cir. 2012) ("BIECA").  LL 38, which is aimed at gathering information regarding deposit banks' efforts to address the banking needs of New York City's small businesses or partner in community development efforts, for example, clearly serves the City's interests, just as similar laws regarding the deposit of State funds (which Plaintiff does not challenge) serve the State's proprietary interests.  And the alleged "conflict" with federal and state laws and regulations is premised on Plaintiff's misreading of LL 38.  Not surprisingly, Plaintiff is unable to cite a single case holding that state and federal laws or regulations limit the information that local governments can request or consider when deciding where to deposit funds their funds.

## ARGUMENT

## POINT I

### PLAINTIFF MISREADS CONTROLLING PRECEDENT AND FAILS TO DEMONSTRATE A CERTAINLY IMPENDING INJURY IN FACT

**A.     Plaintiff Fails to Demonstrate Cognizable Injury Based on Possible Future Harm of Debarment**

In its Complaint, Plaintiff bases its claim to "[a]n actual and justiciable controversy" on the allegation that "[i]f Local Law 38 is upheld, NYBA members will be forced to risk potential debarment or expend resources to comply with the Law's requirement," see Complaint ¶¶ 58, 64, 73, 82.  As the Council demonstrated in its memorandum of law in support of its motion to dismiss ("Council MOL") at 7-11, this allegation is insufficient to confer standing under Clapper

v. Amnesty International, USA, 133 S. Ct. 1138 (2013) and Hedges v. Obama, 724 F.3d 170 (2d Cir. 2013), among other cases.

Plaintiff addresses Clapper and Hedges in several ways, none of which are persuasive:

First, Plaintiff makes the conclusory and patently incorrect statement that the RFI proves that "NYBA's members will suffer 'certainly impending'" injury.  NYBA MOL at 15. However, even if the RFI did signal an imminent intent to begin requesting information from banks (which it does not, see infra Point III), the injury Plaintiff alleges would not result from the mere request alone,[2] but only from the speculative series of events that would follow – i.e., that the CIAB will publish an annual report that includes unfavorable treatment of Plaintiff's members, the Banking Commission will consider the CIAB's annual report as one of many factors in deciding which banks to designate, and the Banking Commission will exercise its discretion not to designate one of Plaintiff's members as a deposit bank based on the CIAB's annual report.  Such allegations are insufficient under Clapper to constitute a "certainly impending" injury.  See Clapper 133 S.Ct. at 1147.  Moreover, Plaintiff lacks standing based on any alleged "threat of debarment" because LL 38, like the law at issue in Clapper, "at most authorizes – but does not mandate or direct" the Banking Commission to debar banks based on the CIAB's annual report, making Plaintiff's allegations "necessarily conjectural." Clapper, 133 S.Ct. at 1149 (emphasis in original).

In addition, the Second Circuit in Hedges drew a distinction "between Congress, on the one hand, proscribing a certain act and then leaving it to the President to enforce the law … and Congress, on the other hand, authorizing the President to use a certain kind of military force against non-citizens abroad." Hedges, 724 F.3d at 201.  This was an express rejection of the

---

[2] Plaintiff has not claimed that a mere request for information constitutes a cognizable injury and has not disputed the Council's authority to the contrary.  See Council MOL at 9 n.5 (citing Shulz v. I.R.S., 395 F.3d 463, 464 (2d Cir. 2005)).

argument the NYBA makes comparing its speculation about how LL 38 will be implemented and whether the Banking Commission will choose to exercise its discretion to debar banks based on the CIAB's report with the claims in <u>Pacific Capital Bank, N.A. v. Connecticut</u>, 542 F.3d 341 (2d Cir. 2008).  As the court explained, there is "a world of difference between assuming that a state executive will enforce a statute imposing civil penalties" – like the law at issue in <u>Pacific Capital Bank</u> – and assuming that if the CIAB issues an annual report it will be considered by the Banking Commission and that the Banking Commission will exercise authority to debar any of NYBA's members based on the report.  See <u>Hedges</u>, 724 F.3d at 199-201.  "Whether [LL 38] can or will alter executive practice, particularly with regard to [the NYBA's members], is purely a matter of speculation."  <u>Id.</u> at 203.

 In arguing that the distinction between <u>Hedges</u> and <u>Pacific Capital Bank</u> hinges on the fact that <u>Hedges</u> involved national security, Plaintiff not only misreads the quoted portion of <u>Hedges</u> (which is clearly distinguishing <u>Pacific Capital Bank</u> on the grounds discussed above) but ignores the court's explicit instruction that "*[n]othing in this decision should be confused as deference to the political branches because the case involves national security and foreign affairs*."  <u>Hedges</u>, 724 F.3d at 204 (emphasis added).[3]

 The NYBA also argues that the plaintiffs in <u>Clapper</u> and <u>Hedges</u> were not the "targets" of the challenged statutes.  NYBA MOL at 16.  However, the significance of the courts' observation that plaintiffs were not the targets of the challenged statutes was that they could not demonstrate that they had suffered the injury they feared – i.e., unconstitutional eavesdropping – and plaintiffs' allegations about possible future injury were speculative.  Similarly, the NYBA does not claim and cannot demonstrate that its members have suffered any present injury and

---

[3]  In fact, because the claims at issue in <u>Clapper</u> and <u>Hedges</u> were First Amendment challenges, plaintiffs were subject to a *lower* standing threshold than NYBA is on its claims in this case.  See <u>Am. Booksellers Found. v Dean</u>, 342 F3d 96, 101 (2d Cir 2003) (noting that "[t]he standard for non-First Amendment claims is slightly higher.")

Plaintiff's allegations about possible future injury are speculative.  Moreover, the NYBA's characterization of LL 38 as "aimed at" its members is wrong on the merits; the purpose of the Law is to ensure that the City collects relevant information to its decisions as a responsible depositor.  See infra Point IV.

Plaintiff also suggests that Clapper and Hedges do not mean what they say and argues that NYBA does not have to demonstrate a "certainly impending" injury but merely "a probability of injury to establish standing."  NYBA MOL at 16-17 & n.10 (citing Davis v. Federal Election Comm'n, 554 U.S. 724, 734 (2008); MedImmune v. Genentech, Inc., 549 U.S. 118 (2007); Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167 (2000); Clinton v. City of New York, 524 U.S. 417 (1998)).  But NYBA's argument and the cases it relies on merely reprise the argument made by the dissent in Clapper that was rejected by the Court, fatally undermining NYBA's contention that its reading of those cases is consistent with the holding of Clapper.  Compare, e.g., Clapper, 133 S. Ct. at 1147 ("[W]e have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." (internal quotation marks and citations omitted)) with 1160-61 (Breyer, J., dissenting) (citing Davis, MedImmune, Friends of the Earth, and Clinton).

Finally, Plaintiff seeks to minimize the significance of the Banking Commission's existing authority by claiming that plaintiffs need not demonstrate that a favorable decision will relieve every injury, see NYBA MOL at 13-14, and that the Council's reading of LL 38 would render the law superfluous, see id. at 15.  Plaintiff's first argument confuses the concept of redressability with injury in fact.  While the cases NYBA cites deal with the former, the holding from Hedges that the Council relies on was that the American citizen plaintiffs failed to

demonstrate an injury because the law at issue, like LL 38, "neither adds to nor subtracts from whatever authority would have existed in its absence." See Hedges, 724 F.3d at 193.[4]  NYBA's second argument – that the Council's reading renders LL 38 superfluous – ignores the fact that while LL 38 does not change the Banking Commission's authority, it provides the Commission and the public with far greater information about the state of banking in New York City than they receive today.  Whatever value the NYBA may place on the principles of transparency and openness, they are hardly "superfluous."

### B.  Plaintiff Fails to Demonstrate Cognizable Injury Based on Possible Future Reputational Harm

Apparently realizing the weakness of the alleged debarment injury that was the sole focus of its complaint, NYBA turns to another, equally speculative harm: the "reputational harm that banks will suffer by being identified publicly as non-compliant."  NYBA MOL at 10.  However, as the Council demonstrated in its brief in opposition to NYBA's motion for summary judgment, the cases Plaintiff relies on serve only to highlight the inadequacy of its own, purely speculative allegation of "reputational harm."  See Council Memo of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Council MOL in Opp to SJ") at 6-9.

As the court held in Advanced Management Technology, Inc. v. Federal Aviation Administration, 211 F.3d 633, 636 (D.C. Cir. 2000), "[s]tanding cannot be 'inferred argumentatively' but rather 'must affirmatively appear in the record.'" (quoting Spencer v. Kemna, 523 U.S. 1, 10–11 (1998)).  Plaintiff in that case, AMTI, challenged a finding by the FAA that it had misrepresented the availability of key personnel in a contract bid, claiming that the finding caused AMTI reputational harm. Id. at 635-636.  The court dismissed the claim on

---

[4] The court dealt with redressability separately, noting additionally that plaintiffs "cannot show that any detention Hedges and O'Brien may fear would be redressable by the relief they seek, an injunction of Section 1021." Id.

standing grounds because "[a]ll that affirmatively appears here is AMTI's vast exaggeration of the FAA's findings; we have no allegations, much less evidence, as to their present or future consequences."  Id. at 636.

Similarly, all that affirmatively appears in NYBA's complaint is vastly exaggerated speculation about what the CIAB report *might* say and not even an allegation, much less evidence, as to what, if any, consequences the hypothetical statement(s) in the CIAB report might have on the reputation of NYBA's members.  See Schwaninger & Assoc. v F.C.C., 2000 WL 817892 (D.C. Cir. May 19, 2000) (plaintiff lacks standing where it "proffers no 'specific, concrete facts' which show any present or impending consequences to its reputation" (citations omitted)); In re Combustion Equipment Associates, Inc., 838 F.2d 35, 39 (2d Cir. 1988) (dismissing plaintiff's claim for declaratory judgment, noting "that the EPA has not yet tried to coerce [plaintiff] into doing anything, and that the record contains no proof of damage already inflicted" despite plaintiff's designation as a "potentially responsible party" for hazardous waste site); O'Gilvie v Corp. for Nat. Community Serv., 802 F. Supp. 2d 77, 81 (D.D.C. 2011) ("At some point … claims of reputational injury can be too vague and unsubstantiated to preserve a case…."); see also Grendell v. Ohio Supreme Court, 252 F.3d 828, 831-32 (6th Cir. 2001) (holding that plaintiff lacked standing to bring action seeking to prevent enforcement of sanctions notwithstanding impact sanctions could have on his reputation); Cole v. Gummow, 3-02-CV-0705-BD(P), 2003 WL 22455387 (ND Tex Oct. 22, 2003) (holding that plaintiff's "bald assertion" of "reputational interest … is hardly sufficient to carry [its] burden of proof.").

Moreover, Plaintiff's allegation that banks will be "identified publicly as non-compliant," is yet another mischaracterization of LL 38 in an apparent attempt to manufacture an injury. While the Law does require the CIAB to issue an annual report that "identifies any deposit

bank's failure to provide information requested in writing by the board," Charter § 1524-A(1)(b)(iii), nothing in the Law states that banks will be branded "non-compliant" or otherwise stigmatized.  Indeed, the overall report could well reflect positively on the NYBA's members. Plaintiff's assumption to the contrary is not only speculative, but belies a worrying self-perception of its members' efforts to address the needs of the City's small businesses, low- and moderate-income individuals, or otherwise positively impact the City.

Finally, the NYBA's claim that the Council "does not dispute that banks … will expend time and money doing so,"  NYBA at MOL 10, is incorrect.  Rather, the Council simply accepts the allegation as true for purposes of the motion to dismiss, see, e.g., Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir.2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations.").  If the Council's motion is denied based on that allegation, the Council reserves the right to take discovery on the issue.  But in any event, Plaintiff cannot manufacture standing based on costs that it might incur to avoid a bald allegation of reputational injury that is not substantiated even with allegations, much less evidence, of present or future consequences. See Clapper, 133 S. Ct. at 1151 (Plaintiff "cannot manufacture standing merely by inflicting harm on [itself] based on [its] fears of hypothetical future harm that is not certainly impending."  (citations omitted)); Advanced Management Technology, Inc., 211 F.3d at 636.

## POINT II

### PLAINTIFF'S CLAIM IS NOT RIPE

As the Council demonstrated in its memorandum of law in support of its motion to dismiss, the Supreme Court and Second Circuit have cautioned against examining "constitutional claims before a statute's 'effects have been felt in a concrete way by the challenging parties.'" Council MOL at 16 (quoting Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807-808 (2003)).

In attempting to distinguish the cases cited by the Council on the grounds that they "involv[e] the possibility of later agency action, or where there was no clear policy to challenge," NYBA MOL at 19, NYBA ignores the factual circumstances surrounding its own claim: LL 38 was passed nearly two years ago and yet the NYBA conspicuously fails to identify any concrete effect that LL 38 *has had* on its members.  Rather, like the plaintiffs whose claims were found not to be ripe, NYBA relies on speculation about the hardship that its members "will suffer," NYBA MOL at 20-21, as a result of later agency action (i.e., debarment by the Banking Commission or, at minimum, a request for information from the CIAB).  Moreover, NYBA's professed clarity about the timing and form of any later agency action that may allegedly cause its members harm is based on its misreading of the RFI, which plainly does *not* impose any specific obligations on the City.

NYBA also ignores well-established precedent when it suggests that the legal nature of its claim obviates the need for Plaintiff to wait until its claim is ripe.  NYBA MOL at 19.  See Nat'l Park Hospitality Ass'n, 538 U.S. at 812 (finding claim unripe "[a]lthough the question presented here is a purely legal one"); Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 163 (1967) (same).

9

Furthermore, NYBA's reliance on <u>Volvo N. Am. Corp. v. Men's Int'l Prof. Tennis Council</u>, 857 F.2d 55 (2d Cir. 1988) and <u>Chamber of Commerce v. Reich</u>, 57 F.3d 1099 (D.C. Cir. 1995), is misplaced.  In those cases, the court found that the mere existence of the law or rule altered the balance of power.  <u>See</u> <u>Volvo</u>, 857 F.2d at 64 ("In the antitrust context in particular, a rule that has yet to be enacted or enforced may be ripe for review if its mere proposal is likely to inhibit competition."); <u>Chamber of Commerce</u>, 57 F.3d at 1100 ("[A]ppellants claim that the mere existence of the Order alters the balance of bargaining power between employers and employees.").  By contrast, as noted above, LL 38 was passed nearly two years ago and yet Plaintiff does not allege that its members *have suffered* any harm; only that they *will* at some point.  Indeed, Plaintiff waited until more than a year after the Law was passed before even filing a complaint, clearly belying any claim that the mere existence of the Law itself has injured NYBA's members.

Finally, even if, *arguendo*, a mere request for information from the CIAB would constitute a concrete injury, that claim also is premature as the CIAB has not even been constituted, let alone requested any information from banks.  According to the City, "it will likely take, at minimum, six months from [March 21, 2014] before a contractor can be put in place to begin performing the CIAB's work" <u>see</u> City's Letter, dated March 21, 2014, which may or may not include requesting information from NYBA's members.  <u>See</u> <u>infra</u> at Point III.  Thus, there is simply no basis (and NYBA provides none) for Plaintiff's claim that it will have no other opportunity to be heard on its preemption claims.  NYBA Opp. MOL at 20.  If Plaintiff could demonstrate standing (which it cannot), it could bring its claim if and when the CIAB requests information from its members (likely at least six months away), and this Court would have the benefit for analyzing NYBA's alleged harm based on some actual, concrete action by the CIAB

rather than on NYBA's speculation about what the CIAB might do based on Plaintiff's misreading of an RFI, issued by the previous Mayor, after Plaintiff filed its complaint.

## POINT III

### THE CITY'S RFI DOES NOT SUPPORT PLAINTIFF'S ARGUMENTS

NYBA's Memorandum of Law in Opposition to the Council's Motion to Dismiss cites more than thirty times an RFI issued by the City on December 24, 2013, to support Plaintiff's standing and ripeness arguments. But, even ignoring that Plaintiff's claims must have been justiciable at the time the complaint was filed for NYBA to have standing, see, e.g. 13A Wright & Miller, Fed. Prac. & Proc. Juris. § 3531 (3d ed. 2014) ("[S]tanding must exist at the time an action is filed. Post-filing events that supply standing that did not exist on filing may be disregarded…."), the NYBA fundamentally misunderstands the significance of the RFI, apparently confusing it with a contract to perform services. Courts have held that the issuance of requests like the RFI, which impose no legal obligations on the City, are insufficient to confer jurisdiction. See, e.g., New York City Council v. New York City Housing Authority, 41 Misc. 3d 1238(A), 2013 N.Y. Slip Op. 52052(U) (Sup. Ct., N.Y. County, Dec. 2, 2013).

As the RFI states, it "*is issued exclusively for information and planning purposes and does not constitute a solicitation*…. A response to this RFI is not required to be considered for any future RFP or other procurement solicitation…." RFI at 5. Thus, as its name indicates, the RFI is merely an effort by the City to collect *information* from potential vendors about how the City might go about implementing LL 38, once it decides to do so. It imposes no obligations on the City and has even less significance than a Request for Proposals, let alone a contract for services. Furthermore, because the RFI was issued by Mayor Bloomberg, it is entirely

meaningless with respect to the intentions of Mayor de Blasio as to when or how LL 38 will be implemented.

In addition, far from supporting Plaintiff's standing, the substance of the RFI actually confirms that many questions remain unanswered about when and how LL38 will be implemented.  For example, the RFI invites potential vendors "to provide information and recommendations" on such questions as "Will you be able to complete a bank needs assessment by November 1, 2014 and the first annual report by March 1, 2015 assuming a start date of March 2014?" "What are industry best practices in gathering such data from banks?" and "How would you analyze the data for the banking needs assessment and the annual report?" RFI at 3-4. The timeline Plaintiff points to as proof of imminence is explicitly referred to by the RFI as an "estimated timeline," RFI at 2, and imposes no obligation on the City to follow it.  The responses to the RFI could demonstrate that the information the CIAB shall seek to collect under LL 38 is already publicly available.[5]

Plaintiff's repeated assertion that LL 38 *requires* the CIAB to collect information directly from banks, see, e.g., NYBA MOL at 8, is contradicted by the plain language of the Law.[6]  Try as it might to identify a provision of LL 38 that requires the CIAB to collect information *from banks*, the best Plaintiff can do in support is state that "LL 38 expressly provides that the CIAB 'shall seek to collect and consider' data and other information *regarding* 'each deposit banks' efforts…'" Id. (emphasis added).  But collecting information "regarding" a bank does not require that the information come *from* the bank.

---

[5] To be sure, it is also possible that responses to the RFI could demonstrate that the best practice would be to request data from banks directly.  However, the mere possibility that the CIAB could, if it chooses to implement LL 38, request information from banks, is insufficient for Plaintiff to meet its burden of demonstrating standing and ripeness.

[6] It should be noted that this overstatement is at least a retreat from Plaintiff's original claim that "LL 38 requires banks to make various disclosures," see Complaint ¶ 42, which was plainly untenable.

And indeed, the RFI seeks suggestions from vendors about how best to collect the data required by the Law, confirming that the City does not yet know how it will collect the information required by LL 38.  Notably, Plaintiff (whose members presumably know what data is publicly available and what is not) does not claim that it would be impossible for the CIAB to comply with the Law based solely on public information.

Finally, NYBA's suggestion that the Law requires the collection of "'confidential' and 'proprietary' information from individual deposit banks," NYBA MOL at 9, is an even greater distortion of the Law, which expressly *excludes* such data.  Indeed, the provision NYBA cites was included in the law *at the request of banks* in order to leave no doubt that the Law does NOT seek to collect or publish data "deemed confidential or proprietary by the bank."  <u>See</u> Charter § 1524-A(1)(b)(v).

Thus, far from demonstrating that "NYBA's members will suffer 'certainly impending' … economic or reputational injury sufficient to establish standing" NYBA MOL at 15, the RFI proves at most that the City has begun to think about how it might go about implementing LL 38.

**POINT IV**

**LL 38 IS NOT PREEMPTED**

### A. Plaintiff's Narrow Definition of Proprietary Interest Does Not Comport With Controlling Precedent

In arguing that LL 38 is not proprietary, Plaintiff relies on the narrow cost-benefit analysis of the Fiscal Impact Statement and ignores the economic benefits the City derives from depositing funds with institutions that address the broader banking needs of the City.  But it is well-established that a municipality need not restrict its focus to narrow goals such as minimization of costs but may legitimately use its market power in "response to … local

economic needs." Council MOL in Opp. to SJ at 20-21 (collecting cases and quoting Bldg. Indus. Elec. Contrs. Ass'n v. City of New York, 678 F.3d 184, 191 (2d Cir. 2012) (BIECA)).

Plaintiff does not deny that LL 38 would promote economic development but instead criticizes the Council for citing State laws that authorize the Comptroller to deposit state funds in local banks. See NYBA MOL at 24 n.15. But NYBA's response misses the point: if the State has a legitimate proprietary interest in the impact of the state's deposits on economic development in the State, so does the City have a proprietary interest in the impact of the city's deposits on economic development in the City. Plaintiff does not, and cannot, argue that considerations that are clearly proprietary for the State are somehow regulatory for the City.

Perhaps recognizing that LL 38 is a proprietary law under the Second Circuit's recent holding in BIECA, NYBA all but ignores that case in favor of a ten-year-old state trial court decision, Mayor v. Council, 4 Misc. 3d 151 (N.Y. Sup. Ct. 2004) (hereinafter Predatory Lending). But even if Predatory Lending was binding on this Court, it is distinguishable from this case for some of the same reasons that Wisconsin Dep't of Industry, Labor and Human Rel'ns v. Gould, Inc., 475 U.S. 282 (1986) was distinguished in BIECA. First, as noted above, LL 38 was passed in response "to local economic needs." BIECA, 678 F.3d at 189. Second, as both the Council and the Mayor have noted, the designation of deposit banks under LL 38 will continue to be made by the Banking Commission on a case-by-case basis, making whatever impact the Law may have far narrower than that of the Predatory Lending law, which imposed an across-the-board ban on banks that failed to meet certain conditions. See Council MOL in Opp. to SJ at 24; Mayor's Letter dated March 21, 2014 at 3-4. It is no accident that LL 38 does not follow this model and focuses instead on the mere collection and publication of information.

14

### B.  LL 38 Does Not Conflict With Federal or State Laws or Regulations

Finally, NYBA's argument that LL 38 conflicts with federal and state banking laws is premised on misstatements concerning LL 38 and the Council's position.

NYBA claims that LL 38 requires banks to maintain, collect, and provide information to the City because the Law "explicitly states that the CIAB '*shall* seek to collect' information relating to deposit banks…"  NYBA MOL at 31.  But this is a *non sequitur*.  Would a law requiring the Secretary of State to seek to resolve disputes between Israelis and Palestinians require Israelis and Palestinians to resolve their disputes?  If only peace in the Middle East were so simple.

NYBA also seeks to distinguish LL 38 from writing letters or holding hearings on the grounds that the Law "coerces deposit banks to open their books … by imposing penalties for non-compliance, including public identification and the threat of disbarment."  Id.  But banks that fail to respond to a letter or testify at a hearing would be subject to the same potential "penalties" as there is nothing to bar the author of a letter from publicly identifying those banks that fail to respond or the Banking Commission from considering a bank's lack of response when making designation decisions.  Moreover, NYBA has failed to cite a single case holding that federal or state banking laws or regulations were intended to prohibit local governments, when deciding where to deposit their funds, from requesting or considering any information from banks other than exactly what is required under the CRA.

For these reasons, and the reasons cited in its memorandum of law in support of its motion to dismiss and its memorandum of law in opposition to NYBA's motion for summary judgment, the Council disputes Plaintiff's claim that LL 38 interferes with federal or state laws or regulations.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiff's complaint in its entirety.


Dated:        New York, New York
              April 4, 2014

                              _____/s/ Jeffrey P. Metzler_____

                              Jeffrey P. Metzler
                              Acting General Counsel
                              The Council of the City of New York
                              250 Broadway, 15th Floor
                              New York, New York 10007
                              (212) 788-9131
                              jmetzler@council.nyc.gov
                              *Attorney for Petitioner-Respondent*